POINSETT LUMBER & MANUFACTURING COMPANY *v*. BOARD OF DIRECTORS OF ST. FRANCIS LEVEE DISTRICT.

Opinion delivered November 30, 1914.

1.    TRAM ROADS—TAXATION—ST. FRANCIS LEVEE DISTRICT.—The term, "tramroads," as used in the Act of 1893, p. 27, creating the St. Francis Levee District, and in the amending acts, (1903, p. 104, and 1907, p. 492), where the board of said district is empowered to levy a tax upon all "tramroads," *held*, to cover and include a road used by a lumber company exclusively for hauling logs to a saw mill, and constructed like all ordinary railroads with ties and steel rails spiked down upon the ties.

2.    TRAM ROADS—TAXATION.—A tram road may be taxed under the Act of 1893, p. 27, as amended by the Acts of 1893, p. 104, and 1907, p. 492, although it is constructed upon land belonging to another owner.

Appeal from Poinsett Chancery Court; *Charles D. Frierson,* Chancellor; affirmed.

*Allen Hughes,* for appellant.

The reasonable construction of the statutes, Acts 1893, p. 27, Acts 1903, p. 104, and Acts 1907, p. 492, is

that as to tram roads, an assessment is authorized, not where the tram is wholly on the land owner's own premises, but only where, running like a railroad upon a right-of-way acquired from others for that purpose, it constitutes a distinct and separable item of real property.

*H. F. Roleson,* for appellee.

The act of April 22, 1907 (Acts 1907, p. 491), is the authority under which the levy on the tramroad was made.

The fact that a tramroad is constructed upon the lands of its owner is of no more force or importance than the fact that a railroad should also be constructed upon lands owned by the railroad company.

The apparent object of the Legislature in placing assessments upon tramroads was because of the peculiar benefit that they derive from protection from floods. The act is plain and the assessment falls within its provisions.

HART, J. The board of directors of the St. Francis Levee District instituted this action in the chancery court against the Poinsett Lumber & Manufacturing Company to collect levee taxes alleged to be due it for the year 1912. The facts were agreed upon, and are as follows:

The Poinsett Lumber & Manufacturing Company owns and operates three miles of tramroad, main line, and three miles of sidetrack, all situated within the boundaries of the St. Francis Levee District. The tramroad is constructed like an ordinary railroad with ties and steel rails spiked down upon the ties. The tramroad is used exclusively for the purpose of hauling logs to the sawmill of the company. It is the intention of the owners of the tramroad to take it up and remove it as soon as the timber is cut off of the land. The tramroad is constructed on lands belonging to the lumber company. The lumber company has paid the levee taxes assessed against the land on which the tram is built. The chancellor held that the tramroad was taxable separate from the land and from the decree entered the defendant lumber com-

pany has duly prosecuted an appeal to this court. The original levee act provides:

"That for the purpose of building, repairing and maintaining the levee aforesaid, and for carrying into effect the objects and purposes of this act, the board of levee directors shall have the power, and it is hereby made their duty, to assess and levy annually a tax not exceeding 5 per cent of the increased value of betterment estimated to accrue from protection given against floods from the Mississippi River by said levee, on all lands within said levee district." Acts of 1893, page 27.

In 1903 an amendment was passed in which the same language was used except that the designation of the property to be assessed is "all lands, railroads and tramroads within the said levee district." See Acts of 1903, page 104. This feature of the statute was amended in 1907, so as to read, "all lands, town lots, railroads and tramroads within the said district.' Acts 1907, page 492.

(1) It is the contention of counsel for the defendant that because the tramroad was constructed on lands belonging to the defendant, and because it was the intention of defendant to take up the tramroad as soon as the timber on its lands was cut off, that the tramroad, under the act, can not be separately taxed. We can not agree with them in this contention. The term, tramroad, has no settled or well defined meaning. It is sometimes applied to street railways and sometimes to r ailways which are built generally along the surface of the ground, where no particular attention is paid to a uniform grading of the roadbed. It is a matter of common knowledge that in this State the term, tramroad, is usually applied to roads constructed with rails spiked down on it like a railway, such roads being used generally for hauling lumber or for transporting coal from mines which are owned and operated exclusively for the benefit of persons who own the timber or the product of the mines and which are not operated as a common carrier.

(2)   We are of the opinion that it was the intention
of the Legislature to use the term, tramroad, in this sense
in the act under consideration.   It can make no difference
that the road was constructed on lands belonging to the
lumber company.   It is a matter of common knowledge
that a railroad is often, in part, constructed over lands
belonging to the railway company and it can not be said
that the road, on that account, ceases to be a railroad or
a common carrier.   We are of the opinion that the Legis-
lature had in mind that lumber companies situated within
the boundaries of the levee district owned and operated
tram roads for the exclusive purpose of hauling logs to
be manufactured into lumber by it and of then hauling the
lumber to a railway.   The Legislature could have ex-
empted tramroads from the provisions of the act, but it
did not see fit to make such exceptions, and the courts
can make none.

We are of the opinion that the decree of the chan-
cellor was correct, and it will be affirmed.